IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

DR. JOHN HAGELIN, DR. MIKE )
TOMPKINS, and the NATURAL )
LAW PARTY OF THE )
UNITED STATES OF AMERICA, )
51  West  Washington  Avenue )
Fairfield,  Iowa  52556 )
       Plaintiffs, )
)
vs. )     Cause No. _____
)
FEDERAL ELECTION COMMISSION AND )
COMMISSION ON PRESIDENTIAL
DEBATES

       Defendants.

Serve:

Federal Election Commission )
999 E Street N.W. )
Washington, D.C.  20463 )
)
Commission on Presidential Debates )
c\o Registered Agent Janet Brown )
601 13th Street N.W. )
Washington, D.C.  20005 )
)
United States Attorney )
Eric Holder )
555 4th Street N.W. )
Washington, D.C.  20001 )

**FILED**

SEP 1 3 1996

Clerk, U.S. District Court
District of Columbia

CASE NUMBER  1:96CV02132

JUDGE: Thomas F. Hogan

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 09/13/96

## VERIFIED COMPLAINT

Come now Dr. John Hagelin, Dr. Mike Tompkins, and the Natural Law Party of the

United States of America and for their Verified Complaint against defendants aver as follows:



## THE PARTIES

1.    Plaintiff Dr. John Hagelin ("Hagelin") is a natural born citizen of the United States, is qualified under the United States Constitution to hold the office of President of the United States of America, and is the duly nominated candidate of the Natural Law Party of the United States of America ("NLP") for that office.  Hagelin has qualified for federal matching funds for the 1996 election, and will appear on the ballots of no fewer than forty-two states and the District of Columbia in the 1996 general election.  Hagelin is eligible for write-in voting in three other states, and litigation is pending regarding his qualification in four remaining states.

2.    Plaintiff Dr. Mike Tompkins is a natural born citizen of the United States, is qualified under the United States Constitution to hold the office of Vice President of the United States of America, and is the duly nominated candidate of the NLP for that office.  Tompkins is on the ballot coextensive with Hagelin, and similarly has qualified for matching federal funds.

3.    Plaintiff NLP is a non-profit corporation organized and existing under the laws of the State of Iowa. The Federal Election Commission ("FEC") acknowledged that the NLP achieved national party status in FEC Advisory Opinion 1992-30, dated September 21, 1992. The NLP has qualified for federal matching funds for the 1996 election. The NLP's candidates will appear on the ballots of no fewer than forty-three states in the 1996 general election. The NLP is currently seeking, through pending litigation, to gain access to the ballots of four other states, and for the remaining three states its candidates have qualified as write-in candidates.

4.    Defendant The Commission on Presidential Debates is a non-profit domestic corporation incorporated in the District of Columbia in 1987 ("CPD"). On November 26, 1985, the Democratic and Republican National Committees executed a Memorandum of Understanding

stating that they would work together to eliminate the League of Women Voters' traditional role as the sponsor of presidential debates, and to replace the League's debates with "nationally televised joint appearances between the presidential and vice presidential nominees of the two major parties... ." Fifteen months later, those dominant parties issued a joint press release announcing the incorporation of the CPD. The release declared that the CPD was a "bipartisan" organization and that it was "formed to implement joint sponsorship of general election...debates...by the national Republican and Democratic Committees between their respective nominees." From its inception, the CPD has been co-chaired by one former Chairperson of the Republican National Committee and one former Chairperson of the Democratic National Committee.

5.     The Federal Election Commission ("FEC") is an administrative agency of the United States government created pursuant to the Federal Election Commission Act (the "Act"), 2 U.S.C. §437c.

## JURISDICTION AND VENUE

6.     Plaintiffs have jurisdiction and venue in this Court pursuant to 42 U.S.C. §1331 and 2 U.S.C. §437g(a)(8)(A), and 28 U.S.C. §2201.

7.     Plaintiffs have standing as parties injured by the violation of the Act, as an "aggrieved party" and as a national committee of a political party under the Act.

## HISTORICAL EXCLUSIONARY CONDUCT OF THE CPD

8.     In July, 1987, the CPD formed an advisory committee to formulate criteria for selecting candidates for its debates. The advisory committee recommended that the CPD invite

only candidates who had a "realistic chance" of winning the general election. The committee's report stated that "the [Theodore] Roosevelt example [in 1912] stands alone in the 20th century" as a third-party candidate who would satisfy this criterion. Theodore Roosevelt, of course, had previously been elected and served as President of the United States.

9.     As of July, 1988, the CPD had not even bothered to inform the public or third parties of the "realistic chance" criterion recommended by its advisory committee. It automatically invited the Democratic and Republican candidates without requiring that they apply, while third-party candidates  were offered no application procedure. Only in response to demands from independent candidate Dr. Lenora Fulani in August, 1988 did the CPD issue its vague, two-sentence criterion embodying the "realistic chance of being elected" concept.

10.     In 1988, after a year-long battle over debate sponsorship between the League of Women Voters and the CPD, a compromise was reached under which there would be rotating sponsorship. The League recoiled, however, when it was presented by the Bush and Dukakis campaigns with a script for every detail of the staging of the debates, ranging from the selection of questioners to the color of the timer lights on the podiums. The League resigned, declaring that to hold itself out as an independent sponsor of such a debate would make it an "accessory to the hoodwinking of the American public." The CPD immediately offered to sponsor the League's debate, acquiescing to every specification of the Bush and Dukakis camps.

11.     In 1992, the entry of Ross Perot posed a dilemma for the CPD. It was clear that Ross Perot was not a Theodore Roosevelt in terms of his "realistic chance" of being elected, but then President Bush insisted on Perot being included in the debates. Bill Clinton finally agreed to Perot's inclusion, but for the CPD to include Perot would force it to ignore its "realistic

chance" criterion. To accommodate the major parties, the CPD begrudgingly invited Perot to participate in the first debate, but Bush and Clinton immediately told the CPD that if it did not include Perot in every debate then they would find another sponsor for the debates. Once again, the CPD took its orders from the major parties, and permitted the major parties to determine which third- party candidates, if any, would be included in the debates.

<u>CPD'S BLATANT VIOLATIONS OF FEC REGULATION</u>

12.    Effective March 13, 1996, the FEC required that every organization staging a presidential debate (such as the CPD) comply with very simple and straightforward candidate-selection criteria, namely:

> For all debates, staging organization(s) must use pre-established objective criteria to determine which candidates may participate in a debate.
>
> For general election debates, staging organization(s) shall not use nomination by a particular political party as the *sole objective* criterion to determine whether to include a candidate in a debate. 11 CFR § 110.13(c).

13.    In defiance of this clear regulatory requirement, the CPD persisted in following its largely subjective selection criteria, set forth at Exhibit 1 hereto, adopted by the CPD in late 1995. In these selection criteria, the CPD gives an automatic invitation to the nominees of the Republican and Democratic parties, even though the governing FEC regulation expressly proscribes such a singular criterion. Specifically, the CPD's selection criteria provide that:

> A Democratic or Republican nominee has been elected to the Presidency for more than a century. Such historical prominence and sustained voter interest warrants the extension of an invitation to the respective nominees of the two major parties to participate in the Commission's 1996 debates.

14.    Moreover, the remainder of the overwhelmingly subjective criteria are to be applied only in determining which "nonmajor" party candidates, if any, will be invited to participate in the 1996 debates. The gist of the subjective criteria: invite only those candidates who, in the opinion of the CPD have a realistic chance of being elected the next President and who "properly are considered to be among the principal rivals for the Presidency."

15.    The CPD acknowledges in the introduction to its selection criteria "contemplate no quantitative threshold" for debate inclusion:

> Rather, the Commission will employ a multifaceted analysis potential electoral success, including a review of (1) evidence of national organization, (2) signs of national newsworthiness and competitiveness, and (3) indicators of national enthusiasm or concern, to determine whether a candidate has a sufficient chance of election to warrant inclusion in one or more of its debates.

16.    It is important to note that some the CPD's selection criteria are clearly objective and satisfy the FEC regulation. Specifically, in the CPD's consideration of "evidence of national organization", the CPD says it will consider the following factors:

> a.    Satisfaction of the eligibility requirements of Article II, Section 1 of the Constitution of the United States.
>
> b.    Placement on the ballot in enough states to have a mathematical chance of obtaining an electoral college majority.
>            ***
> d.    Eligibility for matching funds from the Federal Election Commission....

17.    Plaintiffs Hagelin and Tompkins easily satisfy all of these objective requirements, and is among at most only three to four other candidates nationally who satisfy these objective criteria.

18.     Other than those objective criteria, which the General Counsel to the FEC had suggested in would comply with the governing regulation, the rest of the criteria are baldly subjective. For example, in assessing signs of "national newsworthiness and competitiveness," the Commission promises to endeavor to assess the "professional opinions of Washington bureau chiefs of major newspapers, news magazines, and broadcast networks." It will also consider the opinions of "representative" political scientists at major universities, and, most scientifically, it will canvass the opinions of professional campaign managers and pollsters not then employed by the candidates! To such an amorphous group would be left the task of assessing whether candidates, past or present, such as, John Anderson, John Hagelin, Eugene McCarthy, George Wallace, and Ross Perot, should be invited to a debate hosted by an organization created by the two major parties.

19.     The selection criteria not only "endeavor" to assess the subjective opinions swings of political pollsters, it also attempts to probe the "indicators of national public enthusiasm or concern." Such indicators include the findings of public opinions polls deemed to be "significant" to the Democrats and Republicans on the CPD.

20.     Not surprisingly, one of the five members of the CPD advisory panel, which is now reading the tea leaves of pundit, pollster, and public opinion, is reported to have recently admitted that "There's no way when you're dealing with human beings to remove subjectivity." See St. Louis Post-Dispatch, September 8, 1996.

21.     There is also no way the CPD will voluntarily invite third parties to the staged event that was designed, from its inception, to be a debate between only the major party nominees. As further evidence that the leadership of the CPD has decided who shall debate even

before its advisory panel gives its report to the group, the co-chairs declared at a PBS press event in Chicago on August -- ,1996 that the participation of third party candidates such as Ross Perot and Harry Browne (Libertarian Party) is unlikely in 1996.  On September 10, 1996, the CPD co-chair announced on C-Span that none of the third-party candidates would be invited to the debates.

## THE FEC'S PARALYSIS

22.     The FEC has since the effective date of the §110.13 in June 1996, has apparently taken no action to enforce this requirement despite CPD's open and notorious pronouncement of unlawful subjective criteria.  On August 23, 1996, Hagelin and Tompkins were nominated as the Presidential candidates of the NLP.   Thereafter, on September 5, 1996, the NLP filed its complaint with the FEC challenging the CPD's application of the impermissible subjective standards.  Notwithstanding the plain violation of the governing regulation, the FEC advised the NLP that it would be unable to make a determination in response to the NLP complaint prior to the staging of the first debate.   Moreover, the procedural rules governing the FEC make it impossible for that agency to act on the NLP complaint prior to the upcoming general election. In other words, resort to the administrative review procedures of the FEC will be a useless and a meaningless formality and will provide no adequate remedy to Plaintiffs.   Under these circumstances, the FEC's failure to act was contrary to law, has deprived Plaintiffs of its rights under the Act, and further exhaustion of procedures before the FEC will permanently deprive Plaintiffs of their right to a remedy for CPD's unlawful actions.

## COUNT I

### Injunctive Relief Against CPD

23.     Plaintiffs incorporate by reference herein the allegations of paragraphs 1 through 22 above.

24.     The illegal conduct of the CPD threatens Plaintiffs and the American public with immediate and irreparable injury for which there is no adequate remedy at law.  Application of the unlawful subjective criteria will taint the presidential and vice presidential debates, exclude legitimate candidates of recognized national parties, stifle the flow of information to the voting public, and will inevitably influence and distort the results of the upcoming general election.

25.     An award of money or other legal remedies or procedures will not redress the threatened damage to Plaintiffs and the electoral process.

26.     Prohibiting the CPD from applying the proscribed subjective standards, and conversely requiring them to appropriately apply the pre-existing objective standards, will not deprive the CPD of any lawful rights or prerogatives.  Rather, such a remedy would simply require the CPD to do that which the law already plainly requires, thus no legitimate interests of the CPD would be impaired by the entry of the requested injunctive relief.

27.     The public interest is profoundly served by the entry of a temporary restraining order and preliminary injunctive relief prohibiting the CPD from engaging in the threatened legal conduct.  The requested injunctive relief will result in the electorate being exposed to the broad range of opinions and ideas of the national political parties, major and non-major, which information will permit voters to make more fully informed decisions on who shall lead the country into the 21st century.

WHEREFORE, Plaintiffs pray this Court enter its temporary restraining order and grant preliminary and permanent injunctive relief as follows:

(a)    Prohibit the CPD from applying any of its selection criteria other than those objective criteria expressly set forth in paragraph 14 above;

(b)    Require the CPD to use pre-existing objective criteria as required by the regulation;

(c)    Provide this Court with a written report of its determination of eligibility for debate participation under the permissible pre-existing objective criteria,

and for such other and further relief as this Court may deem just and proper.

## COUNT II

### Alternative Injunctive Relief Against The FEC

28.    Plaintiffs adopt and incorporate by reference herein the allegations of paragraphs 1 through 27 above.

29.    It is within this Court's jurisdiction to order the FEC to render a decision on CPD's violation immediately and to perform its duties in such a time and manner as to make the administrative procedures available to Plaintiffs prior to the staging of the first Presidential debate.

WHEREFORE, as an alternative to the injunctive relief requested in Count I, Plaintiffs pray this Court enter its order requiring the FEC to immediately act on Plaintiffs complaint against the CPD, to rule on the legality of the subjective criteria promulgated by the CPD, and to do the foregoing in such a time and manner as to permit this Court's review prior to the staging of the first debate, and for such other and further relief as this Court may deem just and proper.

## COUNT III

### Declaratory Relief

30.     Plaintiffs incorporate by reference herein the allegations of paragraph 1 through 29 above.

31.     On the basis of the foregoing, there exists a present justiciable controversy between the parties.

WHEREFORE, Plaintiffs pray this Court declare that the subjective debate selection criteria promulgated by the CPD are unlawful and contrary to the plain regulatory requirements of 11 C.F.R. §110.13(c), and for such other and further relief as this Court may deem just and proper.

GALLOP, JOHNSON & NEUMAN, L.C.

By: _____

Thomas M. Newmark
Daniel G. Vogel
Paul V. Rost
1600 Interco Corporate Tower
101 South Hanley Road
St. Louis, Missouri  63105
(314) 862-1200

and

Marcus & Thompson
51 West Washington, Suite 201
Fairfield, Iowa  52556
(515) 472-5945

Attorneys for Plaintiff

-11-

By: _____
      Robert E. Steinberg, Esq, #318725.
      PORTER, WRIGHT, MORRIS & ARTHUR
      1233 20th Street, N.W.
      Washington, DC  20036-2395
      (202) 778-3000


I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ , 1996.

NATURAL   LAW   PARTY   OF   THE
UNITED STATES OF AMERICA


By: _____
      Kingsley Brooks
      its Party Chair


Via Certified Mail
Attorney General of the United States
United States Department of Justice
Janet Reno, Esq.
10th & Constitution Avenue N.W.
Washington, D.C.  20530

-12-